## Gallagher v. White Rock, Inc.

*Stephen E. Patterson,* for plaintiffs.
*John F. Nelson,* for defendant.

EPPINGER, *P.J.,* August 3, 1981—At a late date in these proceedings the parties stipulated that plaintiffs, purchasers of a house from defendant

builder-developer, could file an amended complaint in a suit arising out of defects in the construction of the house and that defendant could respond. Defendant filed preliminary objections which are now before us.

The defects include warped and delaminated plywood sheathing on the roof, insufficient roof support, failure to open the ridge vent, undersized rafters and the improper installation of vertical supports contributing to ceiling drywall separation. Besides the roof defects, it is alleged the heat pump operates with a humming noise and burning smell and fails to sufficiently heat and cool the dwelling. There are no allegations that the roof defects have caused water to come into the house. There are allegations of inconvenience, discomfort and annoyance during the period of repair.

Defendant demurrers to that part of plaintiffs' count 1 which is founded on an implied warranty of habitability. We sustain the demurrer.

In 1972, our Supreme Court held in Elderkin v. Gaster, 447 Pa. 118, 288 A. 2d 771 (1972), that a builder-vendor "impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner, and that it is fit for the purpose intended—habitation." 447 Pa at 128, 288 A. 2d at 777.

But because the parameters of the implied warranty have not been clearly defined by Pennsylvania courts, what constitutes a breach is uncertain. Implied warranty liability in other jurisdictions has encompassed various non-trivial defects in workmanship and materials: water seepage into basement; foundation damage due to unstable soil and interior discharge of sewage. See 47 Temple L.Q. 172, 179, fn. 50 (1973) (citing cases).

In 1977, an Illinois appellate court outlined the concept of habitability in these words:

"The primary function of a new home is to shelter its inhabitants from the elements. If a new home does not keep out the elements because of a substantial defect of construction, such a home is not habitable within the meaning of the implied warranty of habitability . . . Another function of a new home is to provide its inhabitants with a reasonably safe place to live, without fear of injury to person, health, safety or property. If a new home is not structurally sound because of a substantial defect of construction, such a home is not habitable within the meaning of the implied warranty of habitability. If a new home is not aesthetically satisfying because of a defect of construction, such a defect should not be considered as making the home uninhabitable . . . These are, in our opinion, the basic parameters of habitability." Goggin v. Fox Valley Construction Corp., 48 Ill. App. 3d 103, 365 N.E. 2d 509 (1st D. 1977) (citations omitted).[1]

In Banville v. Huckins, 407 A. 2d 294 (1979), concerning the implied warranty of habitability, the Supreme Judicial Court of Maine said:

"Habitability is a term difficult of precise definition. Every minor defect in a new home does not necessarily make the structure uninhabitable. On the other hand, the warranty should not be defined in such strict terms as to require the defect to be of such magnitude as to require that the structure be deemed unlivable. Thus, we are required to look at each situation and to analyze the extent, or magnitude, of the defect and determine whether it resulted in unsuitablity for habitation. . . . Whether

1. The implied warrante of habitability now recognized in Illinois is less limited in scope. See Peterson v. Hubschman Construction Co, Inc., 76 Ill. 2d 31, 389 N.E. 2d 1154 (1979). See also Morrissy, The Implied Warrante of Habitability: A Step Toward Protecting Home Buyers, 23 Trial Lawyer's Guide, No. 2, 137 (1979).

or not a particular defect renders the dwelling 'unsuitable' necessarily requires inquiry as to whether a reasonable person faced with such a defect would be warranted in concluding that a major impediment to habitation existed."

In Banville, the home's basement area, planned and designed for family occupancy, was periodically flooded with ten inches of water. The court found this situation to fall within its concept of uninhabitability.[2]

Our Supreme Court discussed a breach of the implied warranty of habitability relating to residential leases in Pugh v. Holmes, 486 Pa. 272, 405 A. 2d 897 (1979), saying that the breach had to be the result of a defect which would prevent the use of the dwelling as a place of habitation. The court said that at a minimum the premises had to be safe and sanitary, but not perfect or aesthetically pleasing.

We do not believe the Gallaghers have set forth a cause of action for breach of warranty of habitability. There are no allegations of a defect which poses a substantial threat to their health and safety; that the home is unsafe or unsanitary and therefore unfit to live in or that the defects in the roof have caused it to function improperly to let the elements in. We find no allegation constituting, if proven, a major impediment to habitation.

The test of whether the house is defective, for the purposes of the implied warranty of habitability, is one of reasonableness in the construction of the house. We conclude those defects alleged are not of such magnitude to give rise to the strict liability which grows out of a breach of this warranty. So we will sustain the demurrer to this count.

---

2. We reached a similar conclusion in King v. Eberly, 1 Franklin 37 (1977), where on occasions water flooded the cellar to a depth of about four feet, rendering the water system inoperable.

Plaintiffs also ask for fees paid to an architect to ascertain the extent of the alleged defects in their dwelling, and defendant has moved to strike this claim. We are referred to two cases. Plaintiffs say they are entitled to recover this expense, relying on Neville Chemical Co. v. Union Carbide Corp., 422 F. 2d 1205 (3d Cir., 1970). Defendant says they are not, citing Becker v. Borough of Schuylkill Haven, 200 Pa. Superior Ct. 305, 189 A. 2d 764 (1963). The latter holds that plaintiffs cannot recover the trouble and expense of establishing his rights. In Neville, a plaintiff was held to be entitled to recover expenses of technical research in determining its liability to customers who had bought a defective product from plaintiff manufactured by defendant. Thus, this expenditure was not one to establish plaintiff's right against defendant. Since the rule in Neville has no application in our case, we hold plaintiffs are not entitled to recover the architect's fees. Accordingly paragraph 16(a) is stricken.

Included in the complaint is a claim for damages due to annoyance, inconvenience and discomfort. The claim appears in the assumpsit count, in paragraph 16(e), and by incorporation in the trespass count. Defendant has moved to strike paragraph 16(e), and we grant the motion in the assumpsit count because, in the time impressed upon us to decide these matters and still permit the case to go to trial this month, we could find no authority for the recovery nor were we persuaded by the argument that the reasoning of Siegel v. Struble Brothers, Inc., 150 Pa. Superior Ct. 343, 28 A. 2d 352 (1942), may be extended to apply to such a claim in assumpsit. However, there is authority to recover this type of damage in trespass: Dussell v. Kaufman Construction Co., 398 Pa. 369, 157 A. 2d 740 (1960).

Defendant's motion for more specific pleading

with respect to the claim for negligent installation of the heat pump is overruled.

## ORDER

July 31, 1981, defendant's motions to strike paragraph 16(a) and paragraph 16(e), the latter only as to the assumpsit count, are granted and the demurrer is sustained. All other preliminary objections are overruled.

Since the demurrer is sustained on the ground that there are no allegations in the complaint that would bring plaintiff's claim within the implied warranty of habitability and the court is without knowledge whether such facts exist, plaintiffs are granted 20 days in which to file a second amended complaint. If plaintiffs desire to proceed without filing a second amended complaint they may file a statement expressing that intention foreshortening the 20 day period and the defendant may then file an answer.